## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DAWN BALL,** | : | **CIVIL NO. 1:12-CV-11** |
| | : | |
| **Plaintiff,** | : | **(Chief Judge Kane)** |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| | : | |
| **SUP'T. GIROUX, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## REPORT AND RECOMMENDATION

### I.    Statement of Facts and of the Case

### A.    Introduction

The plaintiff, Dawn Ball, is an inmate housed in the Restricted Housing Unit at the State Correctional Institution (SCI) Muncy, who by her own account suffers from a cascading array of severe mental illnesses, and who, in other litigation before this Court, candidly acknowledges that she is profoundly disturbed, informing the court that:

> My mental health is declining. I suffer from OCD so bad I scrub my
> hands till they bleed, confusion, PTSD, disassociative disorder, I smell,
> see and hear things not there, severely stressed, phobias, agoraphobia,
> severe anxiety, lack of interest in things, lack of arousal in things, racing
> thoughts, suicidal, cognitive problems and disorders, lack of interest in

life, disoriented, dizzyness, paranoid–schizophrenic, constant worry, frightened scared, can't properly care for myself, tics, bipolar, manic depressive, mood swings that are so severe, can't think clearly....

Ball v. Beard, No. 1:09-CV-845 (Doc. 42, pp.6-7).

Furthermore. Ball is also an inmate who is alleged to engage in destructive, self-defeating and senseless behavior, conduct which was aptly described by prison officials in one of Ball's companion cases in the following terms:

[Y]our destruction of multiple cells . . . by spreading feces and urine combined with paper products from your property and cell related property made it impossible to identify your missing property item by item as you submit.

(Ball v. Sisley, No. 1:11-CV-877 (M.D.Pa., Doc. 27, p.13.)

Ball is also, by her own admission, an inmate with a propensity of sudden, explosive rages, as illustrated by the civil complaint which she has filed Ball v. Barr, No.1:11-CV-2240 (M.D.Pa.). In this complaint, Ball describes an episode in which a discussion regarding the aesthetic qualities of a piece of cornbread escalated in a matter of moments into a profanity-laced wrestling match over a food tray.

While she suffers from paranoia, schizophrenia, and experiences these visual and auditory hallucinations, Ball is also a prodigious federal court litigant, bringing numerous lawsuits based upon her perception of the events that take place around her in prison. Indeed, at present Ball has a total of twenty two lawsuits pending before this

court.[1]  Ball has also been a prodigiously unsuccessful litigant, who has had at least

three prior lawsuits dismissed either for failure to exhaust her administrative remedies,

or as frivolous on the grounds that the lawsuit failed to state a claim upon which relief

could be granted. See, e.g., Ball v. SCI Muncy, No. 1:08-CV-391 (M.D. Pa.); Ball v.

Hartman, No. 1:09-CV-844 (M.D. Pa.);  Ball v. Butts, No. 1:11-CV-1068, (M.D.Pa.);

Ball v. Butts, No. 11-2862,  2011 WL 4375782, 1 (3d Cir. Sept 21, 2011).

###    B.    Ball's Current Lawsuit

It is against this backdrop that Ball pursues the instant case. On January 4,

2012, Ball filed a civil complaint, (Doc. 1), which presents the novel claim that Ball

is entitled to dictate the terms and conditions under which correctional officials may

videotape her movements in the corridors of the Restricted Housing Unit at SCI

Muncy.

---

[1]See, e.g., Ball v. SCI Muncy, No.1:08-CV-700 (M.D.Pa.); Ball v. SCI-Muncy, No. 1:08-CV-701 (M.D.Pa.);Ball v. Hill, No.1:09-CV-773 (M.D.Pa.); Ball v. Beard, No. 1:09-CV-845 (M.D.Pa.); Ball v. Lamas, No. 1:09-CV-846, (M.D. Pa.); Ball v. Oden , No 1:09-CV-847 (M.D.Pa.); Ball v. Bower, No. 1:10-CV-2561 (M.D.Pa.); Ball v. Sisley, No. 1:11-CV-877 (M.D.Pa.); Ball v. Struther, No. 1:11-CV-1265 (M.D.Pa.); Ball v. Hummel, No. 1:11-CV-1422 (M.D.Pa.); Ball v. Beckley, No. 1:11-CV-1829 (M.D.Pa.); Ball v. Sipe, No. 1:11-CV-1830 (M.D.Pa.); Ball v. Craver, No. 1:11-CV-1831 (M.D.Pa.); Ball v. Powley, No. 1:11-CV-1832 (M..D.Pa.); Ball v. Cooper, No. 1:11-CV-1833 (M.D.Pa.); Ball v. Famiglio, No. 1:11-CV-1834 (M.D.Pa.); Ball v. Eckroth, No. 1:11-CV-2238 (M.D.Pa.); Ball v. Campbell, No. 1:11-CV-2239 (M.D.Pa.); Ball v Barr, No. 1:11-CV-2240 (M.D.Pa.); Ball v Curham, No. 1:12-CV-10 (M.D.Pa.); Ball v Giroux, No. 1:12-CV-11 (M.D.Pa.); Ball v Giroux, No. 1:12-CV-12 (M.D.Pa.).

Specifically, in this complaint, Ball alleges that: "On 12/2/11 I found out this sup't. was behind the authorization of videotaping me when I come out of my cell." (Id.)[2] Asserting that this practice is "discriminatory" and "against my rights", (id.), Ball then alleged that: "I never gave them permission to do this and it's a violation and I want it stopped and all footage destroyed." (Id.)  On the basis of these  allegations, and Ball's apparent claim that the videotaping may not occur without her permission, Ball sues two correctional officials–Superintendent Giroux and Major Franz–and demands both $50,000 in compensatory damages and punitive damages of $50,000 from each defendant.

Along with this complaint, Ball has filed a motion for leave to proceed *in forma pauperis*. (Doc. 2.) For the reasons set forth below, this motion will be GRANTED, but as part of the court's legally-mandated screening process it is recommended that this complaint, in its current form, be dismissed for failure to state a claim upon which relief can be granted.

## II.   Discussion

---

[2]To the extent that this assertion by Ball is meant to suggest that she has just learned of videotaping in the RHU, we note parenthetically that Ball's claims are contradicted by statements which Ball made in a civil complaint which she filed almost three years ago, in May of 2009, in Ball v. Lamas, No. 1:09-CV-846, which specifically refers to RHU prison videotapes.

A.      **Screening of *Pro Se* Prisoner Complaints–Standard of Review**

This Court has a statutory obligation to conduct a preliminary review of *pro se*

complaints which seek redress against government officials.   Specifically, we are

obliged to review the complaint pursuant to 28 U.S.C. § 1915A which provides, in

pertinent part:

> **(a) Screening**. - The court shall review, before docketing, if feasible or,
> in any event, as soon as practicable after docketing, a complaint in a civil
> action in which a  prisoner seeks redress from a governmental entity or
> officer or employee of a governmental entity.

> **(b) Grounds for dismissal**. - On review, the court shall identify
> cognizable claims or dismiss the complaint, or any portion of the
> complaint, if the complaint-

> (1) is frivolous, malicious, or fails to state a claim upon which relief may
> be  granted; or

> (2) seeks monetary relief from a defendant who is immune from such
> relief.

Under Section 1915A, the Court must assess whether a *pro se* complaint "fails

to state a claim upon which relief may be granted."   This statutory text mirrors the

language of Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that

a complaint should be dismissed for "failure to state a claim upon which relief can be

granted."  Fed. R. Civ. P. 12(b)(6).

With respect to this benchmark standard for legal sufficiency of a complaint, the

United States Court of Appeals for the Third Circuit has aptly noted the evolving

standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in
> recent years. Beginning with the Supreme Court's opinion in <u>Bell Atlantic
> Corp. v. Twombly,</u> 550 U.S. 544 (2007) continuing with our opinion in
> <u>Phillips</u> [<u>v. County of Allegheny</u>, 515 F.3d 224, 230 (3d Cir. 2008)]and
> culminating recently with the Supreme Court's decision in <u>Ashcroft v.
> Iqbal</u> –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly
> shifted from simple notice pleading to a more heightened form of
> pleading, requiring a plaintiff to plead more than the possibility of relief
> to survive a motion to dismiss.

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may

be granted, the Court must accept as true all allegations in the complaint and all

reasonable inferences that can be drawn from the complaint are to be construed in the

light most favorable to the plaintiff.  <u>Jordan v. Fox Rothschild, O'Brien & Frankel,

Inc.</u>, 20 F.3d 1250, 1261 (3d Cir. 1994).   However, a court "need not credit a

complaint's bald assertions or legal conclusions when deciding a motion to dismiss."

<u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997).  Additionally a

court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not

alleged."   <u>Associated Gen. Contractors of Cal. v. California State Council of

Carpenters</u>, 459 U.S. 519, 526 (1983). As the Supreme Court held in <u>Bell Atlantic

Corp. v. Twombly</u>, 550 U.S. 544 (2007), in order to state a valid cause of action a

plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id. In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1950. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949. Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 1950.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain

more than mere legal labels and conclusions.  Rather, a complaint must recite factual

allegations  sufficient to raise the plaintiff's claimed right to relief beyond the level of

mere speculation. As the United States Court of Appeals for the Third Circuit has

stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state
> a claim, district courts should conduct a two-part analysis. First, the
> factual and legal elements of a claim should be separated. The District
> Court must accept all of the complaint's well-pleaded facts as true, but
> may disregard any legal conclusions.  Second, a District Court must then
> determine whether the facts alleged in the complaint are sufficient to
> show that the plaintiff has a "plausible claim for relief." In other words,
> a complaint must do more than allege the plaintiff's entitlement to relief.
> A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

In addition to these pleading rules, a civil complaint must comply with the

requirements of Rule 8(a) of the Federal Rule of Civil Procedure which defines what

a complaint should say and provides that:

> (a) A pleading that states a claim for relief must contain (1) a short and
> plain statement of the grounds for the court's jurisdiction, unless the court
> already has jurisdiction and the claim needs no new jurisdictional support;
> (2) a short and plain statement of the claim showing that the pleader is
> entitled to relief; and (3) a demand for the relief sought, which may
> include relief in the alternative or different types of relief.

Thus, a well-pleaded complaint must contain more than mere legal labels and

8

conclusions.   Rather, a *pro se* plaintiff's complaint must recite factual allegations which are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action. Applying these standards, we find that the claims set forth  this complaint are subject to summary dismissal.

> ### B.   Ball's Current Complaint Fails to Meet the Pleading Standards Prescribed by Law

Judged against these standards, the claims set forth in Ball's current *pro se* complaint clearly fail to state a claim upon which relief can be granted. At bottom, liberally construed, Ball's *pro se* complaint advances constitutional claims based upon a right to privacy, and rests on the novel proposition that videotaping the movement of a disruptive and highly litigious inmate from her cell through the general corridors of a prison violates that inmate's constitutional rights.

This novel proposition, which is the keystone of Ball's current *pro se* complaint, simply cannot withstand legal scrutiny. At the outset, Ball clearly errs when she suggests that the use of videotape equipment in the RHU at SCI Muncy is an unusual practice, which is specifically targeting her. Quite the contrary, we take judicial notice of the fact that such videotaping is a commonplace occurrence in these Restricted Housing Units, where correctional staff plainly have a need to carefully document their

dealings with a population of dangerous, disruptive and often litigious inmates. There is nothing unusual or improper about this conduct. Rather, it is routine, and has been routinely noted without objection by the federal courts. See, e.g., Brown v. Blaine, 185 F.App'x 166 (3d Cir. 2006); Young v. Beard, No. 07-2266, 2011 WL 902447 (M.D. Pa. Feb. 11, 2011); Paluch v. Dawson, No. 06-1751, 2007 WL 4375937 (M.D. Pa. Dec. 12, 2007); Scott v. Mooney, No. 05-1091, 2006 WL 288377 (M.D. Pa. Feb. 6, 2006); Cole v. RHU Officers, No.04-1218, 2005 WL 2648342 (M.D. Pa. Oct. 17, 2005).Indeed, ironically, in some instances prisoners in the RHU have cited the *failure* to videotape their cell movements as proof of bad faith or misconduct by prison officials. See Scott v. Mooney, No. 05-1091, 2006 WL 288377 (M.D. Pa. Feb. 6, 2006). Thus, inmate litigation has in the past strongly suggested a correctional need for precisely this type of videotaping.

Beyond the fact that such videotaping of inmate cell movements in the RHU is commonplace, has not engendered adverse comment by the courts, and is guided by a prudent need to fully document encounters with disruptive inmates, Ball's complaint fails on more fundamental legal grounds. Ball simply has not stated a colorable constitutional claim that this videotaping violates her rights. In a prison setting, several immutable and longstanding truths govern such inmate privacy claims. At the outset, the Supreme Court has long recognized the stark legal reality that a prison inmate

retains only those rights that are "not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Pell v. Procunier, 417 U.S. 817, 822 (1974). Therefore, "[i]n analyzing the privacy interests of prisoners themselves, [it has been said that]: 'The prisoners' [privacy] claims are best supported analytically under the fourth amendment's guarantee of one's *legitimate expectation of privacy* against unreasonable searches and seizures ... and under the liberty component of the fourteenth amendment.' Grummett v. Rushen, 779 F.2d 491, 493 n. 1 (9th Cir.1985) (emphasis added)." Desroche v. Strain, 507 F.Supp.2d 571, 584 (E.D.La. 2007).

Viewing Ball's complaint through the legal prism of Fourth Amendment jurisprudence in a prison setting, it is clear that her demand that she be able to dictate the terms and conditions under which she is videotaped stepping outside her cell in prison simply fails because she cannot meet the legal lynchpin for making such a claim by showing that she has a reasonable expectation of privacy with respect to her movements out of her cell. Quite the contrary, the Supreme Court has explicitly held that inmates, like Ball, do not possess a reasonable expectation of privacy in their cells entitled to constitutional protection, stating in terms that are equally applicable here that:

A right of privacy in traditional Fourth Amendment terms is

> fundamentally incompatible with the close and continual surveillance of
> inmates and their cells required to ensure institutional security and
> internal order. We are satisfied that society would insist that the prisoner's
> expectation of privacy always yield to what must be considered the
> paramount interest in institutional security. We believe that it is accepted
> by our society that "[l]oss of freedom of choice and privacy are inherent
> incidents of confinement." Bell v. Wolfish, 441 U.S., at 537, 99 S.Ct., at
> 1873.

Hudson v. Palmer, 468 U.S. 517, 527-528 (1984).

Given the undeniable legal reality that inmates do not have a reasonable

expectation of privacy in their cells, courts have frequently rejected inmate civil rights

claims premised, in part, upon videotaping cell extractions or videotaping inmates as

they are moved through the corridors of a prison. See, e.g., Camp v. Brennan, 54

F.App'x 78 (3d Cir. 2002)(allegations *inter alia* of videotaping cell extraction);

Desroche v. Strain, 507 F.Supp.2d 571, 584 (E.D.La. 2007); Jones/Seymour v.

LeFebvre, 781 F.Supp. 355 (E.D. Pa. 1991)(videotaping inmates in corridor of prison).

In short, the simple truth is that Ball has no reasonable expectation of privacy in

activities occurring at the entryway to her cell and in the RHU corridors, and therefore

cannot claim a constitutional right to forbid prison officials from videotaping her

actions in these areas of the prison.

But even if Ball had stated a colorable constitutional claim relating to her

assertion that she may not be videotaped leaving her cell without her consent, the defendants are nevertheless entitled to qualified immunity from these claims for damages.   In order to establish a civil rights claim Ball must show the deprivation of a right secured by the United States Constitution or the laws of the United States. Satisfying these elements alone, however, does not guarantee that Ball is entitled to recover damages from these public officials. Government officials performing "discretionary functions," are insulated from suit if their conduct did not violate a "clearly established statutory or constitutional right[] of which a reasonable person would have known."  Wilson v. Layne, 526 U.S. 603, 609 (1999); see also Pearson v. Callahan, 555 U.S. 223 (2009).  This doctrine, known as qualified immunity, provides officials performing discretionary functions not only defense to liability, but also "immunity from suit."  Crouse v. S. Lebanon Twp., 668 F. Supp. 2d 664, 671 (M.D. Pa. 2009) (Conner, J.) (citations omitted).  Qualified immunity

> balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.  The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."

Pearson, 555 U.S. at 231.

Determinations regarding qualified immunity, and its application in a given case, require a court to undertake two distinct inquiries.  First, the court must evaluate whether the defendant violated a constitutional right.  <u>Saucier v. Katz</u>, 533 U.S. 194, 201-02 (2001), abrogated in part by <u>Pearson</u>, 555 U.S. 223; <u>Curley v. Klem</u>, 499 F.3d 199, 206 (3d Cir. 2007); <u>Williams v. Bitner</u>, 455 F.3d 186, 190 (3d Cir. 2006).  If the defendant did not actually commit a constitutional violation, then the court must find in the defendant's favor.  <u>Saucier</u>, 533 U.S. at 201.  If the defendant is found to have committed a constitutional violation, the court must undertake a second, related inquiry to assess whether the constitutional right in question was "clearly established" at the time the defendant acted.  <u>Pearson</u>, 555 U.S. at 232; <u>Saucier</u>, 533 U.S. at 201-02.  The Supreme Court has instructed that a right is clearly established for purposes of qualified immunity if a reasonable state actor under the circumstances would understand that his conduct violates that right.  <u>Williams</u>, 455 F.3d at 191 (citing <u>Saucier</u>, 533 U.S. at 202).

In order to find that a right is clearly established, "the right allegedly violated must be defined at the appropriate level of specificity." <u>Wilson</u>, 526 U.S. at 615.  The Supreme Court has explained that, at least in some cases, "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has [not] previously been

held unlawful." Hope v. Pelzer, 536 U.S. 730, 741 (2002) (quoting United States v. Lanier, 520 U.S. 259, 271 (1997) (internal quotation marks and citation omitted)).  In some cases, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." Wilson, 455 F.3d at 191 (quoting Hope, 536 U.S. at 741).

The court is no longer required to conduct these two inquiries sequentially, Pearson, 555 U.S. at 239-40, and it may forego difficult constitutional issues and award qualified immunity to a defendant if it is apparent that the defendant did not violate rights that were clearly established at the time the defendant acted. Id. Where a court elects to address the alleged constitutional violations, however, the court's analysis of the merits for purposes of summary judgment merges with analysis of the deprivation of federal rights for purposes of qualified immunity. Gruenke v. Seip, 225 F.3d 290, 299-300 (3d Cir. 2000); Crouse, 668 F. Supp. 2d at 671; see also Grant v. City of Pittsburgh, 98 F.3d 116, 122 (3d Cir. 1996) ("[C]rucial to the resolution of [the] assertion of qualified immunity is a careful examination of the record . . . to establish . . . a detailed factual description of the actions of each individual defendant (viewed in a light most favorable to the plaintiff).") Because qualified immunity entails a consideration of whether the law was clearly established at the time of a defendant's conduct, this defense, which focuses on the state of the law, presents a question of law

for the court, and one which can often be resolved on summary judgment. <u>See</u> <u>Montanez v. Thompson</u>, 603 F.3d 243 (3d Cir. 2010).

In this case, prison officials were confronted by a difficult, obstreperous inmate who had a penchant for violent confrontations with staff and for making accusations of staff misconduct. These factors all strongly favored the meticulous practice of videotaping staff contacts with this inmate. Furthermore, on these facts, prison officials could not reasonably have anticipated that videotaping their dealings with Ball when they removed her from her cell would constitute violations of some clearly established constitutional rights of the plaintiff. Indeed, given the fact that this precise practice has for many years been routinely noted without objection by the federal courts, the defendants could not have reasonably understood it to be forbidden. <u>See, e.g.</u>, <u>Brown v. Blaine</u>, 185 F.App'x 166 (3d Cir. 2006); <u>Young v. Beard</u>, No. 07-2266, 2011 WL 902447 (M.D. Pa. Feb. 11, 2011); <u>Paluch v. Dawson</u>, No. 06-1751, 2007 WL 4375937 (M.D. Pa. Dec. 12, 2007); <u>Scott v. Mooney</u>, No. 05-1091, 2006 WL 288377 (M.D. Pa. Feb. 6, 2006); <u>Cole v. RHU Officers</u>,  No.04-1218, 2005 WL 2648342 (M.D. Pa. Oct. 17, 2005). In short, given the state of the law in this field, in this setting the defendants simply could not have recognized that their actions would violate "clearly established statutory or constitutional right[] of which a reasonable person would have known." <u>Wilson v. Layne</u>, 526 U.S. 603, 609 (1999). Therefore the defendants are entitled to

16

qualified immunity on these claims.[3]

We recognize that in civil rights cases *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, see Fletcher-Hardee Corp. v. Pote  Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), unless granting further leave to amend is not necessary in a case such as this where amendment would be futile or result in undue delay. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). However, in this case it is apparent that Ball's complaint rests on the fundamentally flawed legal premise that she has a reasonable expectation of privacy in her movements outside of her cell. Given that this legal premise is wholly flawed, we submit that no amendment of this complaint can cure these defects. Since the  factual and legal grounds proffered in support of this complaint make it clear that Ball has no right to relief, granting further leave to amend would be futile or result in undue delay. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). Accordingly, it is recommended that the Court dismiss the complaint without providing Ball with further, futile, leave to amend.

Finally, in the event that the complaint is dismissed  without prejudice, we note

---

[3]In appropriate cases this court is entitled to address this qualified immunity defense *sua sponte*, when appropriate. See Doe v. Delie, 257 F.3d 309 (3d Cir. 2001) (affirming *sua sponte* recommendation of qualified immunity by U.S. magistrate judge).

one other, basic flaw in this pleading which should be corrected. This Court should also strike the claim for a specific sum of unliquidated damages, $50,000, from this *pro se* complaint. In this regard **,** Rule 12 (f) of the Federal Rules of Civil Procedure imposes a duty on the Court to review pleadings and provides that the Court may upon its own initiative at any time order stricken from any pleading any immaterial matter. Fed. R. Civ. P. 12(f).  Decisions regarding whether claims may be stricken from a complaint are properly presented to a United States Magistrate Judge for determination in the first instance. Singh v. Superintending School Committee of the City of Portland, 593 F. Supp. 1315 (D. Me. 1984). In this case, Ball's claim for a specified amount of unliquidated damages violates Local Rule 8.1 which provides, in part, that:

> The demand for judgment required in any pleading in any civil action pursuant to Fed.R.Civ.P.8(a)(3) may set forth generally that the party claiming damages is entitled to monetary relief *but shall not claim any specific sum where unliquidated damages are involved.* The short plain statement of jurisdiction, required by Fed.R.Civ.P.8(a)(1), shall set forth any amounts needed to invoke the jurisdiction of the court but no other.

Local Rule 8.1 (emphasis added).

Since this prayer for relief violates Local Rule 8.1 by specifying a particular amount of unliquidated damages, that specific dollar claim should be stricken from the complaint without prejudice to the Plaintiff arguing in any subsequent trial or hearing on the merits for any appropriate amount of damages supported by the evidence.

## III.   <u>Recommendation</u>

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the Plaintiff's motion for leave to proceed *in forma pauperis* be GRANTED (Doc. 2), but that the Plaintiff's complaint be dismissed for failure to state a claim upon which relief may be granted.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified  proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 11th day of January, 2012.

<u>**S/Martin C.  Carlson**</u>
Martin C. Carlson
United States Magistrate Judge
